NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 7, 2011
Decided March 24, 2011

*Before*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

CHARLES N. CLEVERT, JR., *District Judge*[*]

| | |
|---|---|
| No. 10-2077 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| John R. Garcia, | |
| *Plaintiff-Appellant*, | No. 08 C 3366 |
| *v.* | **Marvin E. Aspen**, *Judge*. |
| United States Postal Service, et al. | |
| *Defendant-Appellee*. | |

## O R D E R

John Garcia, a Mexican-American postal employee, was fired for unacceptable conduct tied to his handling of several transactions with customers. He sued, claiming that his firing was based on his national origin and on the fact that he had previously filed

---

[*]Hon. Charles N. Clevert, Jr., of the Eastern District of Wisconsin, sitting by designation.

complaints with the Equal Employment Opportunity Commission.  In a thorough and well-reasoned opinion, the district court granted summary judgment in favor of the Postmaster General, and Garcia appeals.  Because he has not produced any evidence which, if believed, would entitle him to relief under either claim, we affirm.

I.

Garcia worked at the Hazel Crest, Illinois, post office as a window clerk, selling stamps and handling the packages customers needed mailed. Of the four window clerks, he was the only Mexican-American. At some point in 2004, the Post Office conducted a routine audit and found an $800 inventory shortage at the Hazel Crest branch. The branch postmaster, Patrick Kavanaugh, filed a report about the loss indicating that he suspected Garcia was responsible because he was the only full-time window clerk, he had previously discussed gambling results, and he had recently flashed a large roll of cash. The report was forwarded to a postal inspector assigned to the case, Ramona Parker, and she investigated the loss.

During the investigation, Parker looked at the transactions that each window clerk made.  She specifically looked at how many times each teller accessed his or her drawer without making a sale, how many single-stamp sales were made, and how many sales were voided. It turned out that Garcia had significantly more of these transactions than the other window clerks. He had roughly ten to one hundred times more single-stamp sales than his coworkers: Garcia transacted 284 single-stamp sales in one month, while one window clerk had just 3 single-stamp sales and another had 26 single-stamp sales in the same period.

Based on this, Parker focused her investigation on Garcia and installed surveillance equipment to monitor his work station. She did not, however, monitor the other tellers' work stations. There were three discrepancies for the day he was monitored by videotape. One customer bought a book of stamps for $7.40, but Garcia voided the sale into his register and entered a single-stamp sale. Another customer actually did purchase just one stamp, and Garcia did not enter it at all.  A third customer bought a book of stamps for $7.40, but again, Garcia voided the sale and entered it as a three-stamp sale.

Several weeks later, Parker interviewed Garcia about these transactions and he said he "probably" does not enter all transactions correctly and that he "probably" does not put all sales into the register. In her report, she catalogued the three improper transactions and noted the $800 shortage that spurred the investigation. She then gave the report to Kavanaugh who later interviewed Garcia about his behavior. At the interview, Garcia could

not explain the improper transactions; instead, he repeatedly answered, "I did not knowingly put in any wrong transactions." Kavanaugh, with the approval of his supervisor, fired Garcia.

Garcia sued, claiming that the real reason behind his firing was national-origin discrimination and retaliation against him for his previous EEOC complaints—he had filed a complaint in 2003 and several others over the previous decade. The district court held that Garcia had no evidence which, if believed, could establish that his national origin was a motivating factor in his termination, nor did he have any evidence that could establish a causal connection between his EEOC complaint in 2003 and his firing fifteen months later.

## II.

On appeal, Garcia claims he presented sufficient evidence before the district court to avoid summary judgment. We review de novo the granting of summary judgment and construe all facts and reasonable inferences in favor of the non-moving party. *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 653-54 (7th Cir. 2010).

Garcia focuses much of his argument on his national-origin claim, arguing that he can establish his claim through either the direct or indirect method of proof. To make a prima facie case for discrimination under the direct method of proof, Garcia must present direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Under the indirect method, to establish a prima facie case for discrimination, Garcia must present evidence that: (1) he is a member of a protected class, (2) he was meeting his employer's legitimate expectations, (3) he was subject to an adverse employment action, and (4) the employer treated similarly situated employees outside the protected class more favorably. *Id.*

Concerning the direct method, Garcia attempts to paint a "convincing mosaic of discrimination" through two sets of allegations: one, that racist comments were made to him sometime over the course of his fifteen years with the post office; two, that he was the only one that the postmaster suggested was responsible for the account deficiency. For disparaging remarks about race to constitute direct evidence of discrimination, the remarks must be (1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 850 (7th Cir. 2010). That did not happen here. Kavanaugh did not make the comments at issue; Garcia could not say when the comments were made; nor does anything in Garcia's deposition suggest the comments were made in reference to his firing. Thus,

they are no more than "stray remarks," which fail to create a suggestion of racial animus, let alone a convincing mosaic. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781-82 (7th Cir. 2007) ("[S]tray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."(quotation omitted)). And the fact that Garcia was the only one mentioned in Kavanaugh's report does not suggest racial animus, especially since he articulated why he suspected Garcia: Garcia had access to the inventory, he gambled, and he was seen with large amounts of money.

Concerning the indirect method of proof, Garcia focuses much of his argument on the district court's holding that he could not establish that similarly situated employees outside his protected class were treated more favorably than he was. This argument is also two-fold: one, he claims that other clerks had suspicious transactions but were not videotaped, and two, that other clerks had large discrepancies in their drawers but were never written up. To establish a valid comparison under Title VII, the similarly situated employee must be "directly comparable to the plaintiff in all material respects, which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (citation and quotation omitted).

There are many problems with Garcia's argument. For one, being investigated is not a materially adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). The Post Office has the right to make sure it isn't fleeced by its employees. The other problem with Garcia's argument is he was not fired because he had an inordinate number of single-stamp sales. That fact simply made him the prime suspect. He was fired for unacceptable conduct, namely improperly recording transactions as evidenced by the videotape that showed him voiding larger, proper sales and entering smaller, improper ones.

It's also for this reason that Garcia's second argument fails. He claims that other clerks had discrepancies in their drawers but they were not written up or fired. Garcia, however, does not support that allegation with any admissible evidence. And even if he could be more specific, his claims are based on his own collection of workplace rumors. The fact that other clerks' drawers were short one day, without more, is not the same as improperly recording transactions by voiding the more expensive sales and entering much cheaper sales. Thus, based on the unsupported allegations in Garcia's brief, the other tellers' actions are not comparable to his. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 752 (7th Cir. 2006) (noting that to be similarly situated, employees must have a "comparable set of

failings."). Because Garcia cannot point to a similarly situated employee outside the protected class who was treated more favorably, he cannot establish a prima facie case of national-origin discrimination.

Garcia also presses his retaliation claim on appeal. This claim rests on the fact that he made an EEOC claim in May 2003 and that Kavanaugh was aware of his EEOC complaint when he fired Garcia in August 2004. To establish a claim for retaliation, Garcia must show that he engaged in statutorily protected activity, he suffered an adverse employment action, and a causal connection exists between the two events. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). We have repeatedly held that a year between the adverse action and the protected activity—without something more—cannot establish a causal connection. *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 481 (7th Cir. 2010); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (holding a year is too long). And the fact, by itself, that Garcia's supervisors knew of the prior complaint does not suggest or establish a causal connection. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein*, *P.C.*, 277 F.3d 882, 895 (7th Cir. 2001). In sum, Garcia has failed to present evidence that would establish a causal connection between his earlier EEOC complaint and his firing.

III.

Garcia failed to produce evidence to establish that his firing was based on his national origin or in retaliation for his previous complaints with the EEOC. Therefore, the judgment of the district court is AFFIRMED.